UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARY DEAN MUHAMMED** | **CASE NO. 3:19-CV-00298** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **DELHI CHARTER SCHOOL** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc.# 8] filed by defendant, Delhi Charter School. For reasons assigned below, it is recommended that the motion to dismiss be GRANTED, and that plaintiff's complaint be DISMISSED, with prejudice, in its entirety.

### Background

On March 7, 2019, plaintiff Mary Dean Muhammed filed the instant suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against her former employer, Delhi Charter School ("DCS"). Muhammed alleged that from June 2012 until May 2017 she was employed by DCS as an elementary schoolteacher. On January 17 and 18, 2017, Muhammed reported to her supervisors, Nikki Roark and Christopher Broussard, that a fellow teacher, Jordan Sullivan, had engaged in race-based discrimination practices in her classroom. On January 23, 2017, following an investigation, Sullivan either was terminated or resigned. Likewise, on January 25, 2017, Broussard either was forced to resign or was terminated.

In February 2017, Muhammed felt that she was being retaliated against for having reported the discriminatory practice. Accordingly, she submitted grievances to the school's headmaster and the schoolboard chair. On February 28, 2017, however, plaintiff was advised that her employment contract would not be renewed for the following year because she was not certified. She also was

notified that, her lack of certification notwithstanding, her position was being cut. Muhammed's employment was terminated in May 2017. On May 15, 2017, DCS listed an advertisement online for an individual apparently to fill Muhammed's former position.

Plaintiff contends that DCS unlawfully retaliated against her by discharging her from employment after she engaged in protected activity. She seeks an award of compensatory damages, punitive damages under 42 U.S.C. § 1981, and an award of reasonable attorney's fees under 42 U.S.C. § 1988.

On May 13, 2019, DCS filed its answer to the suit, which included, *inter alia*, a defense that plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Answer [doc. # 3]).

On June 12, 2019, the court issued its scheduling order, which set the matter for jury trial on August 10, 2020, and also set deadlines of December 26, 2019, February 24, 2020, and April 9, 2020, for the amendment of pleadings, discovery completion, and the filing of dispositive motions, respectively. (Sched. Order [doc. # 7]).

On February 14, 2020, DCS filed the instant motion to dismiss for failure to state a claim upon which relief can be granted on the basis that plaintiff failed to exhaust administrative remedies by filing an untimely charge with the EEOC. Plaintiff filed her opposition to the motion on March 10, 2020. [doc. # 12]. DCS filed its reply on March 17. [doc. # 13]. Thus, the matter is ripe.

### 12(b)(6) Standard[1]

---

[1] Ordinarily, a Rule 12(b) motion must be made before a responsive pleading is filed. *See* Fed.R.Civ.P. 12(b) and *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). However, Rule 12(h)(2) permits a party to assert a defense for failure to state a claim upon which relief can be granted in any pleading permitted under Rule 7(a), or via a Rule 12(c) motion for judgment on the pleadings. Fed.R.Civ.P. 12(h)(2). Here, the court may treat defendant's Rule 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c). *See Jones, supra*. In any event, the Fifth Circuit employs the same standard for a Rule 12(c) motion as it does for a Rule 12(b)(6) motion.

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal

---

*Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004).

3

theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). In the context of employment discrimination claims, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff need not establish a prima facie case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial

4

notice of matters of public record).   Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim."   *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

### Relevant Facts[2]

From February 2017 through January 2019, Amy McMillin was employed as a paralegal by plaintiff's counsel, Sudduth and Associates, L.L.C.   (Affidavit of Amy McMillin; Compl., Exh. A).[3]

According to McMillin, on July 7, 2017, she

> [p]repared the EEOC Intake Questionnaire for mailing and submitted via prepaid USPS regular mail to the EEOC New Orleans Field Office, located at the following address:  Hale Boggs Federal Building, 500 Poydras Street, Suite 809, New Orleans, LA  70130. [She] personally acknowledge[d] that [she] printed out the EEOC Intake Questionnaire, with exhibits, and put it in its envelope for USPS mailing.

*Id*.

Thus having "personally mailed the EEOC Questionnaire and supporting documents," McMillin believed that the charge was "submitted" timely.   *Id*.

On October 17, 2017, Sudduth & Associates, L.L.C.'s managing partner, James Sudduth, III, asked McMillin (apparently via email), if she had "filed" plaintiff's "EEOC." (McMillin Affidavit; Compl., Exh. A-C).   McMillin replied that it had been filed.   *Id*.

On October 30, 2017, Sudduth & Associate, L.L.C.'s office manager, Ryan Smith, emailed McMillin about EEOC prescription deadlines that were coming up in certain cases, including a

---

[2] The following timeline is taken from the allegations contained in plaintiff's complaint and the attachments thereto.

[3] McMillin signed her affidavit on January 15, 2019.   *Id*.

5

purported November 4, 2017, deadline for Muhammed. (McMillin Affidavit; Compl., Exh. A-D). McMillin confirmed that "Mary Dean has been filed . . ." *Id.*

On an unspecified date in 2018, McMillin spoke to an unknown "investigator," about cases "in general," that Sudduth & Associates, L.L.C, had submitted in 2017, but for which they had received no response. (McMillin Affidavit). The investigator advised McMillin that there was a backlog of work that the office was processing, including all charges submitted after May 2017. *Id.*

According to plaintiff's complaint,

> [a]s additional time passed without correspondence from the EEOC, Ms. McMillin again contacted the EEOC to inquire about the status of Plaintiff's Charge. It was at this time that Ms. McMillin was informed that the EEOC New Orleans Field Office did not have record of receiving the charge of information mailed to it on July 7, 2017.
>
> Immediately thereafter, Sudduth & Associates, LLC sent correspondence to the EEOC, dated November 14, 2018, re-forwarding the information that had been submitted via USPS mail on July 7, 2017, along with a request that the submission be deemed timely as it had been originally submitted well within the time period for filing EEOC charges in Louisiana . . .
>
> Upon receipt of the re-forwarded information, the EEOC deemed Plaintiff to have filed her formal Charge of Discrimination (Charge No. 461-2018-00627) on December 6, 2018.
>
> In response to Plaintiff's Charge, the EEOC issued a Dismissal and Notice of Suit Rights on December 7, 2018, stating that the EEOC was closing its file because the charge was "not timely filed with the EEOC." [Plaintiff's] counsel received the Notice on December 12, 2018.
>
> In response, Plaintiff filed a Notice of Appeal to the EEOC on January 4, 2019, and she thereafter filed a brief in support thereof on February 3, 2019.
>
> Plaintiff received correspondence from the EEOC on March 1, 2019, affirming that the December 7, 2018 Dismissal and Notice of Suit Rights remained in effect and that Plaintiff would have to file suit in district court before expiration of 90 days from her receipt of such Notice.

(Compl., ¶¶ 7-12) (citations and paragraph numbering omitted).

In the EEOC's March 1, 2019, denial of plaintiff's appeal/request for reconsideration, Martin Ebel, Director of Field Management Programs, stated that EEOC records showed that plaintiff's counsel, James Sudduth, III, had spoken with Mildred Johnson, Supervisor for the New Orleans Field Office, on November 15, 2018, to discuss plaintiff's claim. (EEOC March 1, 2019, Response; Compl., Exh. G). Ms. Johnson advised Mr. Sudduth that the EEOC had no record of ever receiving plaintiff's questionnaire on July 6, 2017. *Id.* Ms. Johnson asked plaintiff's counsel why he waited so long to contact the EEOC, and plaintiff's counsel cryptically replied that he had "500 days to file with another agency but . . . had to file with EEOC." *Id.* According to the EEOC's calculations, the last day for plaintiff to have filed a timely charge with the agency was March 14, 2018, i.e., 245 days before the EEOC actually received plaintiff's questionnaire on November 14, 2018. *Id*.

Mr. Ebel further noted that the New Orleans Field Office was one of five field offices that had launched a pilot version of the online Public Portal some six months before it went nationwide in November 2017. *Id*. He also disputed plaintiff's counsel's suggestion that the New Orleans Field Office was in a state of disarray during the transition to the online system because it received some charges online, whereas other charges still were received in paper form. *Id*. To the contrary, Ebel emphasized that the New Orleans Field Office had well-established procedures for processing inquiries that were received in paper form through the mail. *Id*. Indeed, "digital inquiries [received] through the Online Portal [were] handled separately in a completely different process." *Id*.

## Analysis

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc*. 296 F.3d 376, 378 -379 (5th Cir. 2002); *Dao*

*v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996). A Title VII plaintiff exhausts administrative remedies when she files a *timely* charge with the EEOC and receives a statutory notice of right to sue. *Id.* Title VII's exhaustion requirement is a precondition to filing suit; thus, it is subject to waiver and estoppel. *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 169 (5th Cir.2018) (citations omitted).[4]

In a "deferral state" such as Louisiana,[5] a Title VII plaintiff must file a charge of discrimination with the EEOC within 30 days after receiving notice that the state or local agency has terminated proceedings or within 300 days of the alleged discriminatory employment action, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1); *Burrell v. Brown,* 2000 WL 1056312, *3 (5th Cir. 2000) (unpubl.); *Janmeja v. Board of Supervisors of Louisiana State University,* 96 Fed. Appx. 212, 214 (5th Cir. 2004).

According to Muhammed, the last known date that DCS discriminated/retaliated against her was May 18, 2017 – the date that she saw an advertisement for her former position. (Pl. Memo., p. 4; Compl., ¶ 64). Therefore, plaintiff had 300 days from May 18, 2017, or until March 14, 2018, at the latest, in which to file her charge with the EEOC. (Pl. Memo., pg. 4).

---

[4] Plaintiff alleged in her complaint that filing a charge with the EEOC is a *jurisdictional* prerequisite to suit. (Compl., ¶ 3). It is not.

[5] "A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n. 1 (5th Cir. 1988). The Louisiana Commission on Human Rights has been funded and operating since April 1994, making Louisiana a deferral state since that time. La. R.S. § 51:2233; G. Guidry, *Employment Discrimination Claims in Louisiana,* 45 La. B.J. 240, 241 (Oct. 1997); G. Huffman, *The Louisiana Commission on Human Rights--Now It's for Real,* Briefly Speaking, Spring 1995, at 4 (New Orleans Bar Ass'n)." *Singleton v. RPM Pizza, Inc.,* 2004 WL 2216530, *3, n.1 (E.D. La. 2004).

Muhammed alleged in her complaint (and in a supporting affidavit from her attorney's paralegal, McMillin) that, on July 7, 2017 – some nine months before the deadline -- she placed an intake questionnaire in the U.S. Mail to the EEOC.[6] "Mailing," however, is not "filing" for purposes of Title VII. *Taylor v. Gen. Tel. Co. of Sw.*, 759 F.2d 437, 440 (5th Cir.1985). Rather, a charge is not filed until it is *received* by the EEOC or the state agency responsible for the administration of complaints of employment discrimination. *Kirkland v. Big Lots Store, Inc.*, 547 Fed. Appx. 570, 573 (5th Cir.2013) (citing *Taylor, supra*); *Deleon v. Gen. Insulation, Inc.*, 575 Fed. Appx. 292, 293 (5th Cir.2014).

Immediately prior to November 14, 2018, McMillin learned that the EEOC New Orleans Field Office had no record of receiving the charge information that she had mailed on July 7, 2017. (Compl., ¶¶ 7-8). In other words, according to the complaint, the EEOC did not receive the questionnaire/charge that plaintiff mailed on July 7, 2017, and thus, the July 7, 2017, submission was not filed with the EEOC.

Consequently, plaintiff re-submitted the intake questionnaire, which was received by the EEOC on November 14, 2018 (*see* Compl., Exh. G), and formalized into a charge on December 6, 2018. (Compl., ¶ 9). Accordingly, November 14, 2018, (*i.e., approximately eight months after the 300- day deadline had expired*) is the earliest date that the EEOC actually received, and therefore, filed plaintiff's charge related to her instant claims.

Generally, if an EEOC charge is not timely filed, then a suit based upon the untimely charge should be dismissed. *Kirkland, supra* (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476–

---

[6] For purposes of this motion, the court will construe the questionnaire as a potential "charge." *See Richard v. St. Tammany Par. Sheriff's Dep't*, No. 17-9703, 2018 WL 2065594, at *4 (E.D. La. May 3, 2018) (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 407; 128 S.Ct. 1147, 1160 (2008)) (under certain circumstances, an intake questionnaire may serve as a charge).

9

77 (5th Cir.1991)). Like a statute of limitations, however, filing a timely charge of discrimination with the EEOC is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393; 102 S.Ct. 1127, 1132 (1982). Nevertheless, equitable tolling is to be applied "sparingly." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir.2011) (citing *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061 (2002)). Moreover, the burden of proof lies with the plaintiff to provide justification for equitable tolling. *Id.* (citation omitted).

The Fifth Circuit has recognized three, non-exhaustive bases for equitable tolling: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Granger, supra* (citation omitted). The Fifth Circuit further considers, "(1) whether the plaintiff acted diligently; (2) whether the delay prejudiced the defendant; and (3) the balance of equities." *Jones v. City of Houston*, 756 Fed. Appx. 341, 348 (5th Cir.2018) (citation omitted). Thus, although the courts are reluctant to apply equitable tolling to situations of attorney error or neglect, they are more forgiving when a claimant or her attorney has exercised due diligence in advancing her rights. *Granger, supra* (citations omitted).

In the end, application of equitable tolling is a fact-specific inquiry that lies within the court's sound discretion. *See Granger*, 636 F.3d at 712. Thus, while under certain circumstance a court will not clearly err by submitting the issue of equitable tolling a jury, *see Burrell, supra*, it also may resolve the tolling issue via a 12(b)(6) motion for summary judgment where plaintiff fails to plead facts to plausibly support application of the doctrine or where there is no genuine dispute as to any material fact such that defendant is entitled to judgment as a matter of law. *See e.g., Jones, supra* (affirming Rule 12(b)(6) dismissal of Title VII claim for failure to filed suit timely, despite equitable tolling argument).

In this case, plaintiff argues that although the intake questionnaire she mailed on July 7, 2017, failed to reach the EEOC, this does not constitute error or neglect on her or her attorney's part. The court agrees that plaintiff was not at fault for utilizing the U.S. Postal Service to transmit her intake questionnaire to the EEOC, especially, where, as of July 7, 2017, she still had 250 days to ensure that the EEOC timely received and filed her charge. However, when plaintiff's counsel did not receive a response, acknowledgement of receipt, or a proposed formalized charge from the EEOC following her submission of the intake questionnaire, plaintiff, and her attorney, made no further inquiry for six or more months. It strains credulity for plaintiff and her attorney to argue that they acted diligently and prudently under the circumstances, especially where plaintiff's attorney knew or should have known that a charge is not filed unless and until it is received by the EEOC.

Certainly, there is a presumption that a letter sent via the postal service will be delivered. However, it also is manifest that not all mail reaches its intended destination. Furthermore, even mail that was delivered may become lost or misplaced before it may be accounted for or documented, and thereby officially "received" and filed.[7] At some point, counsel's reliance on the presumption that the questionnaire that he mailed to the EEOC in July 2017 was received by the EEOC becomes untenable. Certainly, by the 30, 60, 90, 120, or 150-day mark without a response, alarm bells should have been going off.

---

[7] In her brief, plaintiff posits that because the EEOC's New Orleans Field Office was piloting the transition to the new online portal system this might explain how the office might have misplaced or otherwise disposed of plaintiff's July 7, 2017, intake questionnaire submission. However, the EEOC categorically rejected this suggestion in its response to plaintiff's appeal/request for reconsideration. (EEOC March 1, 2019, Response; Compl., Exh. G). The EEOC maintained that it had well-established procedures for processing inquiries that it received in paper form. *Id.* Moreover, the digital inquiries received through the online portal were handled separately via a completely different process. *Id.*

11

At that point, counsel could have taken at least one or more steps to ensure that the charge was timely filed. First and foremost, he could have resubmitted the questionnaire/charge via the online portal system which, by November 2017, had gone active nationwide. The effort and cost to do so should have proved negligible, and presumably counsel would have received electronic confirmation of receipt. Second, he could have requested written confirmation from the EEOC that the July 7 submission had been received and filed. Counsel, however, did neither of these things – at least within the 300-day window. Instead, on an unknown date in 2018, i.e., possibly even after the 300 days to file a charge already had expired, counsel's former paralegal asked an unidentified investigator why her office had received no response for cases they had submitted in 2017. The investigator advised McMillin that there was a backlog of work that the office was processing, including all charges submitted after May 2017. Nevertheless, plaintiff's counsel did not ask the EEOC to provide written proof that the questionnaire/charge had been received.

Counsel continued to permit additional time to lapse without correspondence from the EEOC. Shortly before November 14, 2017, or *sixteen* months after she mailed the questionnaire, counsel's paralegal finally contacted the EEOC to inquire specifically about the status of Muhammed's charge, and received confirmation that the EEOC had no record of receiving the questionnaire that she had mailed on July 7, 2017.

Plaintiff proffers no explanation as to why she could not have obtained this confirmation of receipt/non-receipt from the EEOC long before the expiration of the 300- day filing period. Rather, she opted to rely on the representation of an unidentified investigator that there was a backlog of work that the agency was processing. Even if the investigator's statement regarding the backlog was correct, the investigator did not represent to plaintiff's counsel that the agency had received Muhammed's questionnaire/charge. Rather, plaintiff's counsel accepted the backlog as a potential

12

explanation for the EEOC's failure to acknowledge plaintiff's submission for the preceding six-plus months.

The Fifth Circuit, however, has held that an incomplete statement made by the EEOC to a plaintiff during a telephone conversation will not support equitable tolling. *Conaway v. Control Data Corp.*, 955 F.2d 358, 362–63 (5th Cir.1992). As the court explained,

> [t]he EEOC undoubtedly engages in numerous telephone calls every day. It would be virtually impossible for the EEOC or a defendant to rebut a plaintiff's unsupported allegation that the EEOC provided incomplete information in a telephone conversation. Allowing a plaintiff equitably to toll a time limitation based on incomplete information provided in a telephone conversation would create a great potential for abuse.

*Id*.

In response to defendant's motion, plaintiff primarily relies on *Granger v. Aaron's, Inc.*, to support her equitable tolling argument. *Granger, supra.* In *Granger*, plaintiffs' counsel forwarded his clients' signed complaints of discrimination to the Office of Federal Contract Compliance Programs ("OFCCP"), an agency within the U.S. Department of Labor that enforces equal employment opportunities for employees of federal contractors. *Id*. As it turns out, however, the OFCCP could not resolve the claims because Aaron's was not a federal contractor. *Id*. Instead, counsel should have filed the claims with the EEOC. *Id*.

Like the instant case, counsel for Granger submitted the complaints well before expiration of the 300- day deadline. *Id*. In contrast to the present case, however, plaintiffs' counsel in *Granger* made at least *six* phone calls to the OFCCP, and received assurances that the office was investigating the claims that he had submitted. *Id*. Moreover, the OFCCP actually received the complaints within the 300-day deadline. *Id*. However, during counsel's many calls to the OFCCP within the 300-day filing period to inquire about the claims, the OFCCP never disclosed that plaintiffs had filed their claims with the wrong office. *Id*.

13

The court finds that *Granger* remains inapposite.  Here, plaintiff's counsel is unable to represent that he *actually* contacted the EEOC to ensure that it received his submission even once in the ensuing 250-days of the 300-day filing period that remained after he mailed the agency his client's intake questionnaire on July 7, 2017.  Again, the EEOC's online portal filing system also remained available and open throughout this period.  Despite counsel's recognition of the vital importance of a timely-filed EEOC charge, and the dire ramifications for plaintiff's case if the charge were not filed timely, he inexplicably eschewed the relatively costless opportunity to ensure proof of timely submission pursuant to the EEOC's online portal.[8]

Plaintiff's lack of diligence in this case is, in some respects, more pronounced than that of the plaintiff in *Kirkland v. Big Lots Store, Inc., supra*, where the Fifth Circuit affirmed this court's decision not to apply equitable tolling.  In *Kirkland*, plaintiff's attorney purported to mail her client's intake questionnaire to the Louisiana Commission on Human Rights ("LCHR") on March 2, 2010, more than 30 days before the 300-day filing deadline of April 7, 2010.  *Id*.  However, the LCHR did not receive the questionnaire until May 6, 2010.  *Id*.

Here, while plaintiff mailed her questionnaire/charge to the EEOC much earlier into her 300-day filing period than the plaintiff in *Kirkland*, which theoretically should have accorded her much greater protection for any error in the mailing process, she then permitted a considerably greater number of days to lapse before finally inquiring "in general" about the EEOC's failure to acknowledge receipt of the questionnaire.

---

[8] According to the EEOC's decision on plaintiff's appeal/request for reconsideration that plaintiff attached to her complaint, the EEOC issued multiple press releases announcing the availability of the online system.  (EEOC March 1, 2019, Response; Compl., Exh. G).

14

It goes without saying that a claimant has a duty to monitor the status of her proceedings in the EEOC. *Duron v. Albertson's LLC*, 560 F.3d 288, 291 n.13 (5th Cir.2009). Moreover, "[t]he governing statute requires the EEOC to notify the charging party 'within [180] days from the filing of such charge' if it or a state enforcement agency has not filed an action." *Id*. (citing 42 U.S.C. § 2000e–5(f)(1)). A lack of diligence on the part of the claimant, e.g. failure to file a suit or contact the EEOC within the applicable delays may support a conclusion that an action is barred as untimely as a matter of law. *See Duron, supra*. While it certainly is not the court's intention to berate or denigrate counsel's efforts, the court simultaneously is tasked with reviewing the reasonableness of those efforts, and, in this instance, is constrained to decide that counsel did not act with all requisite diligence in the wake of the July 7, 2017, submission. Additional case law confirms that tolling is not available or warranted under the present circumstances.

In *Hull v. Emerson Motors/Nidec*, plaintiff filed an intake questionnaire with the EEOC 124 days into his 180-day filing period, on which he noted that he *intended* to file a charge. *Hull v. Emerson Motors/Nidec*, 532 Fed. Appx. 586, 587 (5th Cir.2013). Hull, however, did not follow-up his questionnaire with a formal charge at that time, and the EEOC declined to pursue the matter further because it determined that Hull likely did not have a valid claim. *Id*. Hull later learned that an apparently similarly situated person of a different race was treated more favorably than himself, and thus, he filed a discrimination charge with the EEOC 222 days after his termination. *Id*.

When Hull's former employer moved for dismissal of his suit for failure to file a timely charge, Hull argued that equity demanded that the limitations period be tolled because he relied

15

on EEOC representations that he had properly filed a charge initially, and that he had been waiting for the EEOC to complete its investigation. *Id*. In affirming the district court's decision not to apply equitable tolling, the court observed that,

> Hull did not fill out or file a charge, and there is no evidence that the EEOC told him he had done so. Indeed, Hull was told by the EEOC on that date that it did not think he had a claim. He claims that he "thought it was filed," but he does not show how the EEOC misled him in any way. **After that day, he took no further steps for almost three months. He did not file a charge, check to see whether a charge had been filed, or communicate with the EEOC at all**. Only after he learned that a white employee had not been terminated after instigating a workplace conflict did Hull return to the EEOC and file a charge, well after the 180–period had expired.

*Hull, supra* (emphasis added).

In *Chappell v. Emco Mach. Works Co.*, plaintiff was discharged from employment on August 31, 1973, and on September 18, 1973, visited the Texas Employment Commission ("TEC") to complain about her treatment. *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1296 (5th Cir.1979). Whitley, an employee at the TEC, assured plaintiff that he would file a complaint with the EEOC on her behalf. *Id*. Between September 18 and February 24, 1974, plaintiff *repeatedly* contacted Whitley regarding the status of her EEOC complaint and was told that the complaint had been filed. *Id*. On March 1, 1974, however, plaintiff hired an attorney who phoned the EEOC and learned that the EEOC had not received plaintiff's complaint, despite the TEC employee's assurances. *Id*. By then, of course, the filing period had lapsed. *Id*.

In declining to extend the tolling principles to the circumstances of that case, the Fifth Circuit observed that,

> Whitley was not an employee of the EEOC, and Chappell could easily have discovered whether her complaint was filed merely by writing or phoning the EEOC office. Yet, for five months, she relied on Whitley's representations, despite the fact that her own repeated inquiries obviously indicate that she knew something was awry. If we were to find that Chappell's reliance on Whitley tolled the time period, there would be no logical reason for denying tolling to a person who has

16

>relied on a lawyer or a relative or an acquaintance to file his or her complaint. A holding of this breadth would seriously undermine the policy of repose inherent in the timely filing period, a policy designed to protect employers from stale claims.

*Chappell v. Emco Mach. Works Co.*, 601 F.2d at 1303.

Muhammed contends that because of the egregiousness of DCS's underlying conduct in this case, defendant would not suffer cognizable prejudice stemming from her failure to timely invoke the EEOC process. However, before the court may consider the absence of prejudice, plaintiff first must identify a factor that might justify tolling. *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151–52; 104 S.Ct. 1723, 1726 (1984). Muhammed, however, has not made that showing here. *See* discussion, *supra*. Moreover, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Brown, supra*. Further, in *Chappell, supra*, the EEOC determined that plaintiff's employer actually had discharged her because of her sex, and issued her a "right to sue" letter on that basis. *Chappell, supra*. That consideration, however, did not suffice to support equitable tolling.

Relatedly, plaintiff argues that exhaustion of administrative remedies in this case would have been futile. However, courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001). Furthermore, if, as plaintiff says, defendant's conduct was particularly egregious, then the EEOC or the attorney general (in the case of a respondent that is a "government, governmental agency, or political subdivision"), might have brought a civil action against the respondent. *See* 42 U.S.C. § 2000e-5(f)(1). Involvement by the EEOC or attorney general at the administrative level also might have persuaded respondent to participate in conciliation.

17

Plaintiff alternatively seeks leave of court to amend her complaint to allege that counsel had a conversation with "EEOC Director Keith Hill, pertaining to the likelihood that Plaintiff's written documentation very may well have, in fact, been misplaced due to the transition the New Orleans Office was undergoing the [sic] switch to the online portal." (Pl. Opp. Memo., pg. 24). Plaintiff, however, did not seek leave of court to amend her complaint. In any event, the proposed amendment would prove futile. As discussed earlier, plaintiff attached to her complaint a copy of the EEOC decision that categorically rejected any suggestion that there was any confusion in its filing process during the transition to the online portal system. (EEOC March 1, 2019, Response; Compl., Exh. G). Plaintiff's proposed amendment would contradict the exhibit attached to her complaint. However, in the event of such a conflict, the exhibit and not the allegation controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir.2004).

Furthermore, even if plaintiff's proposed amendment were credited, it would not change the outcome. While the proposed allegation might help explain why the EEOC failed to document receipt of plaintiff's questionnaire, it does not cure plaintiff's ensuing failure to follow-up in the wake of the EEOC's deafening silence in the many months that followed.

Finally, plaintiff complains that defendant should have raised the timelines issue via summary judgment, and that she should be permitted to conduct additional discovery. While at this stage of the case it arguably would have been preferable *had* defendant raised the present issue via summary judgment motion, plaintiff has not been materially prejudiced thereby. Defendant raised the timeliness as an affirmative defense in its answer. Moreover, plaintiff had eight months after the scheduling order was issued to conduct discovery in this case. She also

18

had two weeks to conduct discovery after defendant filed the instant motion to dismiss. At this point, however, discovery is closed. *See* Sched. Order [doc. # 7]. Therefore, even if this court were to consider defendant's motion under a summary judgment standard, the same result would obtain.

## Conclusion

Plaintiff's complaint, and the attachments thereto, confirm that she did not timely file a charge with the EEOC. Furthermore, she did not set forth facts sufficient to raise the reasonable expectation that discovery will reveal evidence to show that the court should exercise its discretion to excuse her dilatory conduct.[9] Accordingly, she fails to state a claim upon which relief can be granted and dismissal is required. *See Kirkland, supra*.

For these reasons,

IT IS RECOMMENDED that defendant's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8] be GRANTED, and that plaintiff's complaint be DISMISSED with prejudice, in its entirety, at plaintiff's cost. FED. R. CIV. P. 12(b)(6).[10]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

---

[9] In fact, discovery is closed.

[10] To the extent that the undersigned has expanded upon the grounds for dismissal urged by movant, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

**fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 14th day of April 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE